MICHAEL R. LOZEAU (State Bar No. 142893)
DOUGLAS J. CHERMAK (State Bar No. 233382)
Lozeau Drury LLP
1516 Oak Street, Suite 216
Alameda, CA 94501
Tel: (510) 749-9102
Fax: (510) 749-9103 (fax)
E-mail: michael@lozeaudrury.com

ANDREW L. PACKARD (State Bar No. 168690)
Law Offices of Andrew L. Packard
319 Pleasant Street
Petaluma, CA 94952
Tel: (707) 763-7227
Fax: (415) 763-9227
E-mail: andrew@packardlawoffices.com

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

PAUL S. KIBEL (State Bar No. 168454)
Fitzgerald Abbott & Beardsley LLP
1221 Broadway, 21st Floor
Oakland, CA 94612
Tel: (510) 451-3300
Fax: (510) 451-1527
E-mail: pkibel@fablaw.com

Attorney for Defendant
NELSON'S MARINE, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>  Plaintiff,<br><br>  vs.<br><br>NELSON'S MARINE, INC., a corporation.<br><br>  Defendant. | Case No. 3:09-cv-00125-VRW<br><br>**STIPULATION TO DISMISS PLAINTIFF'S CLAIMS; [PROPOSED] ORDER GRANTING DISMISSAL [FRCP 41(a)(2)]** |

1   WHEREAS, on November 4, 2008, Plaintiff California Sportfishing Protection
2   Alliance ("CSPA") provided Defendant Nelson's Marine, Inc. ("Nelson's Marine") with a
3   Notice of Violations and Intent to File Suit ("Notice") under Clean Water Act § 505, 33
4   U.S.C. § 1365.
5   WHEREAS, on January 12, 2009, CSPA filed its Complaint against Nelson's Marine
6   in this Court, *California Sportfishing Protection Alliance v. Nelson's Marine, Inc.,* Case No.
7   3:09-cv-00125-VRW.  Said Complaint incorporates by reference all of the allegations
8   contained in CSPA's Notice.
9   WHEREAS, CSPA and Nelson's Marine, through their authorized representatives
10  and without either adjudication of CSPA's claims or admission by Nelson's Marine of any
11  alleged violation or other wrongdoing, have chosen to resolve in full by way of settlement
12  the allegations of CSPA as set forth in the Notice and Complaint, thereby avoiding the costs
13  and uncertainties of further litigation.  A copy of the Settlement Agreement and Mutual
14  Release of Claims ("Settlement Agreement"), without the attached exhibits, entered into by
15  and between CSPA and Nelson's Marine is attached hereto as Exhibit 1 and incorporated by
16  reference.
17  WHEREAS, the parties submitted the Settlement Agreement via certified mail, return
18  receipt requested, to the U.S. EPA and the U.S. Department of Justice and the 45-day review
19  period set forth at 40 C.F.R. § 135.5 has completed and the federal agencies have submitted
20  correspondence to the Court indicating that they have no objection to the terms of the
21  Settlement Agreement.
22  NOW THEREFORE, IT IS HEREBY STIPULATED and agreed to by and between
23  the parties that CSPA's claims, as set forth in the Notice and Complaint, be dismissed.  The
24  parties respectfully request an order from this Court dismissing such claims.  In accordance
25  with paragraph 2 of the Settlement Agreement, the parties also request that this Court
26  maintain jurisdiction over the parties through December 15, 2011, for the sole purpose of
27  ///
28  ///

resolving any disputes between the parties with respect to enforcement of any provision of the Settlement Agreement.

Dated: May 8, 2009          Respectfully submitted,

LOZEAU DRURY LLP


By:   /s/ *Douglas J. Chermak*_____
      Douglas J. Chermak
      Attorney for Plaintiff California Sportfishing
      Protection Alliance


FITZGERALD ABBOTT & BEARDSLEY LLP


By:   /s/ *Paul S. Kibel* (as authorized on 5/8/09)
      Paul S. Kibel
      Attorney for Defendant Nelson's Marine, Inc.

**[PROPOSED] ORDER**

Good cause appearing, and the parties having stipulated and agreed,

IT IS HEREBY ORDERED that Plaintiff California Sportfishing Protection Alliance's claims against Defendant Nelson's Marine, Inc., as set forth in the Notice and Complaint filed in Case No. 3:09-cv-00125-VRW, are hereby dismissed.

IT IS FURTHER ORDERED that the Court shall retain jurisdiction over the parties through December 15, 2011 for the sole purpose of enforcing compliance by the parties of the terms of the Settlement Agreement, attached to the parties' Stipulation to Dismiss as Exhibit 1.

PURSUANT TO STIPULATION, IT IS SO ORDERED.

Dated: __May 14__, 2009  _____
Judge Vaughn R. Walker
United States District Judge



# EXHIBIT 1

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS

This Settlement Agreement and Mutual Release of Claims ("AGREEMENT") is entered into between the California Sportfishing Protection Alliance ("CSPA") and Nelson's Marine, Inc. ("Nelson's Marine") (collectively, the "SETTLING PARTIES") with respect to the following facts and objectives:

# RECITALS

**WHEREAS**, CSPA is a 501(c)(3) non-profit, public benefit corporation organized under the laws of the State of California, dedicated to the protection, enhancement, and restoration of the San Francisco Bay and other California waters. Bill Jennings is the Chairperson of CSPA and a member of CSPA;

**WHEREAS**, Nelson's Marine is a corporation organized under the laws of the State of California that operates a boatyard at 1500 Ferry Point in Alameda, California (the "Facility") pursuant to State Water Resources Control Board Water Quality Order No. 97-03-DWQ, National Pollutant Discharge Elimination System General Permit No. CAS000001, Waste Discharge Requirements for Discharges of Storm Water Associated with Industrial Activities Excluding Construction Activities (hereinafter, the "General Permit"). A map of the Facility is attached hereto as Exhibit A and incorporated by reference;

**WHEREAS**, on November 4, 2008, CSPA provided Nelson's Marine with a Notice of Violation and Intent to File Suit ("60-Day Notice Letter") under Section 505 of the Federal Water Pollution Control Act (the "Act" or "Clean Water Act"), 33 U.S.C. § 1365;

**WHEREAS**, on January 12, 2009, CSPA filed its Complaint in the United States District Court for the Northern District of California against Nelson's Marine (*California Sportfishing Protection Alliance v. Nelson's Marine, Inc.,* Case No. 3:09-cv-00125-VRW). A true and correct copy of the Complaint, including the 60-Day Notice Letter, is attached hereto as Exhibit B and incorporated by reference;

**WHEREAS**, Nelson's Marine denies any and all of CSPA's claims in its 60-Day Notice Letter and Complaint;

**WHEREAS**, CSPA and Nelson's Marine, through their authorized representatives and without either adjudication of CSPA's claims or admission by Nelson's Marine of any alleged violation or other wrongdoing, have chosen to resolve in full CSPA's allegations in the 60-Day Notice Letter and Complaint through settlement and avoid the cost and uncertainties of further litigation; and

**WHEREAS**, CSPA and Nelson's Marine have agreed that it is in their mutual interest to enter into this AGREEMENT setting forth the terms and conditions appropriate to resolving CSPA's allegations set forth in the 60-Day Notice Letter and Complaint.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, CSPA and Nelson's Marine hereby agree as follows:

## EFFECTIVE DATE

1.  The term "Effective Date," as used in this AGREEMENT, shall mean the last date on which the signature of a party to this AGREEMENT is executed.

## COMMITMENTS OF CSPA

2.  **Stipulation to Dismiss and [Proposed] Order.** Within ten (10) calendar days of the expiration of the Agencies' review period specified in Paragraph 17 below, CSPA shall file a Stipulation to Dismiss and [Proposed] Order thereon pursuant to Federal Rule of Civil Procedure 41(a)(2) with the United States District Court for the Northern District of California ("District Court"), with this AGREEMENT attached and incorporated by reference, specifying that CSPA is dismissing all claims in CSPA's Complaint. Consistent with Paragraphs 23 and 24 herein, the Stipulation to Dismiss and [Proposed] Order shall state that the District Court will maintain jurisdiction through December 15, 2011 for purposes of resolving any disputes between the SETTLING PARTIES with respect to any provision of this AGREEMENT. If the District Court chooses not to enter the Order, this AGREEMENT shall be null and void.

**COMMITMENTS OF NELSON'S MARINE**

3. **Compliance with General Permit.** Nelson's Marine agrees to operate the Facility in compliance with the applicable requirements of the General Permit and Clean Water Act.

4. **Implemented Storm Water Controls**. Nelson's Marine shall maintain in good working order all storm water collection and treatment systems currently installed or to be installed pursuant to this AGREEMENT, including but not limited to, existing housekeeping measures.

5. **Additional Best Management Practices.** Nelson's Marine shall implement the following best management practices ("BMPs") to improve the storm water pollution prevention measures at the drop inlets and outfalls at the Facility:

   a. By March 16, 2009, Nelson's Marine shall upgrade the protections surrounding each of its four (4) storm drains by installing ERTEC Hard Surface Guard around the storm drains, replacing the metal storm drain grates with Starboard drain gates, housing the storm drains inside storage sheds, incorporating an emergency spill kit and emergency storm drain plug kit, and replacing the filter bags associated with each storm drain.

   b. In the outdoor repair and maintenance yard, marked on Exhibit A, Nelson's Marine shall both buttress the currently installed berms and increase the capacity of the capture and treatment system to handle flows from a 25-year, 6-hour storm event. Nelson's Marine shall ensure that outside boat repair and maintenance by both Nelson's employees and the boat owners themselves takes place exclusively within this designated area.

   c. In conjunction with the revision of the Storm Water Pollution Prevention Plan ("SWPPP") described below in Paragraph 15, by March 16, 2009, Nelson's Marine will identify those portions of the perimeter of the

Facility where there is potential for on-site storm water to flow off-site. As part of its revised SWPPP, Nelson's Marine shall install and/or maintain perimeter berms to ensure that on-site storm water is prevented from flowing off-site. Such berms will be indicated in the site map attached to the revised SWPPP.

6. **Increased Housekeeping Measures.** Nelson's Marine shall institute the following accelerated cleaning schedule at the Facility:

   a. Nelson's Marine shall sweep all outside areas of the Facility using its industrial sweeper/vacuum prior to the start of each rainy season, once each week, and prior to any major anticipated storm event that is projected to occur when Nelson's Marine is closed. All sweeping activities performed at the Facility shall be recorded in a sweeping log. A sample blank log form will be included in the Facility's Annual Report and the Storm Water Pollution Prevention Plan.

   b. Nelson's Marine shall clean out the filter bags in each storm drain after each major storm event. Nelson's Marine shall monitor the filters for damage and replace as necessary.

7. **Monitoring**. Nelson's Marine agrees to perform the monitoring described herein during the 2008-2009, 2009-2010, and 2010-2011 rainy seasons in addition to the minimum monitoring requirements of the General Permit.

   a. Nelson's Marine shall monitor all four of the storm water discharge locations. For each discharge location, monitoring samples shall be collected at the actual point of discharge utilizing a collection bucket beneath the drop inlet to capture the storm water. Recognizing that Nelson's Marine (as a tenant of the property where the Facility is located) does not own and may have limited rights of access to underground storm drain sewers, as part of its SWPPP revision, Nelson's Marine will work with its storm water consultant to identify and implement all feasible

      actions that Nelson's Marine can undertake to help prevent commingling of storm water samples with tidal waters from the San Francisco Bay.

b.    All storm water sampling shall be conducted pursuant to a storm water sampling protocol developed by a qualified environmental consulting firm chosen by Nelson's Marine, to be conducted by either an individual from said firm or by or by a Nelson's Marine employee.

c.    Nelson's Marine shall sample and analyze storm water discharges from five (5) qualifying storm events that result in discharge consistent with the requirements and protocols set forth in the General Permit. In the event that the sampling results during a particular rainy season do not indicate any exceedances of the levels of potential concern described below in Paragraph 9, the frequency of the storm water sampling shall be reduced by one sample during the subsequent rainy season. For instance, if the results of the first rainy season do not indicate any exceedances then the number of sampling events for the second rainy season would be reduced from five (5) to 4 (four). Similarly, if there are exceedances during a particular rainy season, the frequency of sampling would increase by one sample for the next rainy season with the caveat that Nelson's Marine shall not have to sample and analyze storm water discharges from more than five (5) qualifying events during a particular rainy season.

d.    Nelson's Marine shall analyze each storm water sample taken in accordance with the General Permit and this Agreement for, at a minimum, total suspended solids, pH, oil and grease or total organic carbon, electrical conductivity, copper, lead, zinc, iron, and aluminum.

e.    During the 2008-2009 rainy season, Nelson's Marine shall sample and analyze one composite sample of storm water flowing from the Facility's roof drain spout to establish background pollutant levels. The sample shall be analyzed for the parameters described up in Paragraph 7(b).

5

SETTLEMENT AGREEMENT: CSPA v. Nelson's Marine, Inc. –
Case No 3:09-cv-00125-VRW

      f.      During each of its monthly wet weather storm inspections required by the General Permit, Nelson's Marine shall photograph each of the four storm drain sheds (outside and inside the sheds) and the outdoor repair and maintenance yard. Copies of the photographs shall be attached to the Facility's Annual Reports.

      g.      All photographs required by this Settlement Agreement shall be in color and electronically formatted. Each photograph shall be identified by date, the person taking the photograph and the location of the Facility being photographed. The title of each electronic photograph shall include, at a minimum, the date it was taken, the initials of the person taking the photograph and the location of the photographed area (for example, "3.13.2009 CN NW Drain"). Any photograph required by this Settlement Agreement shall be provided to CSPA upon request via compact disc(s) as per Paragraph 14 below.

8. **Monitoring Results.** Results from Nelson's Marine's sampling and analysis during the term of this AGREEMENT shall be provided to CSPA within 30 days of receipt of the sampling results by Nelson's Marine or its counsel.

9. **Meet and Confer Regarding Exceedence of Levels of Potential Concern.** If analytical results of storm water samples taken by Nelson's Marine during the 2008-2009, 2009-2010, or the 2010-2011 rainy seasons indicate that storm water discharges from the Facility exceed the following levels of potential concern – Total Suspended Solids: 100 mg/L; Specific Conductance: 200 µmhos/cm; Oil & Grease: 15 mg/L or Total Organic Carbon: 120 mg/L; pH: 6.0-9.0 s.u.; Copper: 0.0636 mg/L; Lead: 0.0816 mg/L; Zinc: 0.117 mg/L; Iron: 1.0 mg/L; and Aluminum: 0.75 mg/L – Nelson's Marine agrees to take additional feasible measures aimed at reducing pollutants in the Facility's storm water to levels at or below these levels.

    In furtherance of that objective, Nelson's Marine shall prepare a written statement ("Memorandum") discussing:

      (1) any exceedance or exceedances;

> (2) an explanation of the possible cause(s) and/or source(s) of any exceedance; and
>
> (3) additional feasible best management practices that will be taken to further reduce the possibility of future exceedance(s).

Such Memorandum shall be e-mailed and sent via first class mail to CSPA not later than July 15th following the conclusion of each rainy season.

10. Any additional measures set forth in the Memorandum shall be implemented as soon as practicable, but not later than twenty-one (21) days from the due date of the Memorandum, except where 1) structural changes require longer than 21 days to complete 2) weather-related conditions render immediate implementation infeasible; or 3) the SETTLING PARTIES agree in writing to defer implementation of specific measures in order to effectively meet and confer in accordance with Paragraph 12. Within thirty (30) days of implementation, Nelson's Marine's SWPPP shall be amended to include all additional BMP measures designated in the Memorandum.

11. Upon receipt of the Memorandum, CSPA may review and comment on any additional measures. If requested by CSPA within twenty-one (21) days of receipt of such Memorandum, CSPA and Nelson's Marine shall meet and confer and conduct a site inspection within sixty (60) days after the due date of the Memorandum to discuss the contents of the Memorandum and the adequacy of proposed measures to improve the quality of the Facility's storm water to levels at or below the Levels of Potential Concern. If within 21-days of the parties meeting and conferring, the parties do not agree on the adequacy of the additional measures set forth in the Memorandum, the SETTLING PARTIES may agree to seek a settlement conference with the Judge assigned to this action pursuant to Paragraphs 23 and 24 below. If the SETTLING PARTIES fail to reach agreement on additional measures, CSPA may bring a motion before the Judge consistent with Paragraphs 23 and 24 below. If CSPA does not request a meet and confer regarding the Memorandum within the 21-day comment period provided for in this paragraph, CSPA shall waive any right to object to such Memorandum pursuant to this AGREEMENT.

12. Any concurrence or failure to object by CSPA with regard to the reasonableness of any additional measures implemented by Nelson's Marine shall not be deemed to be an admission of the adequacy of such measures should they fail to bring the Facility's storm water into compliance with any applicable water quality criteria, levels of potential concern, or benchmarks.

13. In addition to any site inspections conducted as part of meeting and conferring on additional measures set forth above, Nelson's Marine shall permit representatives of CSPA to perform one (1) additional site visit to the Facility per year during normal daylight business hours during the term of this AGREEMENT; provided that CSPA provides Nelson's Marine via e-mail with at least three business days prior written notice.

14. **Provision of Documents and Reports.** During the life of this AGREEMENT, Nelson's Marine shall provide CSPA with a copy of all documents submitted to the Regional Board or the State Water Resources Control Board ("State Board") concerning the Facility's storm water discharges, including but not limited to all documents and reports submitted to the Regional Board and/or State Board as required by the General Permit. Such documents and reports shall be mailed to CSPA contemporaneously with submission to such agency. Nelson's Marine also shall provide CSPA a copy of all documents referenced in this agreement, including but not limited to logs, photographs, or analyses, within seven (7) days of a written request (via e-mail or regular mail) by CSPA.

15. **Amendment of SWPPP.** Within sixty (60) days of the Effective Date of this AGREEMENT, Nelson's Marine shall amend the Facility's SWPPP to incorporate all changes, improvements, sample log forms, and best management practices set forth in or resulting from this AGREEMENT. The Facility shall ensure that the maps, tables, and text comply with the requirements of the General Permit. In addition, Nelson's Marine shall ensure that the SWPPP includes a description of the pollution prevention team, a complete list of the significant materials handled and stored at the site, a thorough description of the potential pollutant sources at the Facility, and a thorough assessment of the potential pollutant sources. A copy of the amended SWPPP shall be provided to CSPA within thirty (30) days of completion.

16.     **Mitigation, Fees, Costs, and Expenses**.  As reimbursement for CSPA's investigative, expert and attorneys' fees and costs, oversight compliance, and in lieu of payment by Nelson's Marine of any penalties that may have been assessed in this action if it had proceeded to trial, Nelson's Marine shall pay CSPA the sum of thirty-six thousand dollars ($36,000).

> a.     An initial payment of ten thousand dollars ($10,000) shall be made by Nelson's Marine within thirty (30) calendar days of the District Court's entry of the Order dismissing the action described in Paragraph 2 of this AGREEMENT.  Payment by Nelson's Marine to CSPA shall be made in the form of a single check payable to "Lozeau Drury LLP Attorney-Client Trust Account."
>
> b.     A second payment of thirteen thousand dollars ($13,000) shall be paid by Nelson's Marine to CSPA within ninety (90) calendar days of the District Court's entry of the Order dismissing the action described in Paragraph 2 of this AGREEMENT.  Within ten (10) days of receipt of this second payment, Lozeau Drury LLP on behalf of CSPA shall forward a payment of twelve thousand dollars ($12,000) to the Rose Foundation for Communities and the Environment for the sole purpose of providing grants to environmentally beneficial projects within the San Francisco Bay-Delta Estuary, relating to water quality improvements in the area.
>
> c.     A third and final payment of thirteen thousand dollars ($13,000) shall be paid by Nelson's Marine to CSPA within one hundred eighty (180) calendar days of the District Court's entry of the Order dismissing the action described in Paragraph 2 of this AGREEMENT.

The above payments shall constitute full payment for all costs of litigation and CSPA's request for a mitigation payment, including investigative, expert and attorneys' fees and costs

incurred by CSPA that have or could have been claimed in connection with CSPA's claims, up to and including the Effective Date of this AGREEMENT.

17.  **Review by Federal Agencies.**  CSPA shall submit this AGREEMENT to the U.S. EPA and the U.S. Department of Justice (hereinafter, the "Agencies") via certified mail, return receipt requested, within five (5) days after the Effective Date of this AGREEMENT for review consistent with 40 C.F.R. § 135.5.  The Agencies' review period expires forty-five (45) days after receipt of the AGREEMENT by both Agencies, as evidenced by the return receipts, copies of which shall be provided to CSPA upon receipt by Nelson's Marine.  In the event that the Agencies comment negatively on the provisions of this AGREEMENT, CSPA and Nelson's Marine agree to meet and confer to attempt to resolve the issue(s) raised by the Agencies.  If CSPA and Nelson's Marine are unable to resolve any issue(s) raised by the Agencies in their comments, CSPA and Nelson's Marine agree to expeditiously seek a settlement conference with the Judge assigned to the Complaint in this matter to resolve the issue(s).

## NO ADMISSION OR FINDING

18.  Neither this AGREEMENT nor any payment pursuant to the AGREEMENT shall constitute evidence or be construed as a finding, adjudication, or acknowledgment of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule or regulation.  However, this AGREEMENT and/or any payment pursuant to the AGREEMENT may constitute evidence in actions seeking compliance with this AGREEMENT.

## MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

19.  In consideration of the above, and except as otherwise provided by this AGREEMENT, the SETTLING PARTIES hereby forever and fully release each other (and CSPA releases the other potentially responsible parties identified in the 60-Day Notice Letter) and their respective successors, assigns, officers, agents, employees, and all persons, firms and corporations having an interest in them, from any and all claims and demands of any kind, nature, or description whatsoever, and from any and all liabilities, damages, injuries, actions or causes of action, either at law or in equity, which the SETTLING PARTIES have against each

other arising from CSPA's allegations and claims as set forth in the 60-Day Notice Letter and Complaint up to and including the Termination Date of this AGREEMENT.

20. The SETTLING PARTIES acknowledge that they are familiar with section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The SETTLING PARTIES hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims against each other (or that CSPA may have against the other potentially responsible parties identified in the 60-Day Notice Letter) arising from, or related to, the allegations and claims as set forth in the 60-Day Notice Letter and Complaint up to and including the Termination Date of this AGREEMENT.

21. For the period beginning on the Effective Date and ending on December 15, 2011, CSPA agrees that neither CSPA, its officers, executive staff, members of its governing board nor any organization under the control of CSPA, its officers, executive staff, or members of its governing board, will file any lawsuit against Nelson's Marine seeking relief for alleged violations of the Clean Water Act or violations of the General Permit. CSPA further agrees that, beginning on the Effective Date and ending on December 15, 2011, CSPA will not support other lawsuits, by providing financial assistance, personnel time or other affirmative actions, against Nelson's Marine that may be proposed by other groups or individuals who would rely upon the citizen suit provision of the Clean Water Act to challenge Nelson's Marine's compliance with the Clean Water Act or the General Permit.

## TERMINATION DATE OF AGREEMENT

22. This AGREEMENT shall terminate on December 15, 2011. However, if by that date the parties have not completed the meet and confer process for the 2010-2011 rainy season described above in Paragraphs 9-11, then the AGREEMENT shall remain in effect until the parties have completed that process.

## DISPUTE RESOLUTION PROCEDURES

23. Except as specifically noted herein, any disputes with respect to any of the provisions of this AGREEMENT shall be resolved through the following procedure. The SETTLING PARTIES agree to first meet and confer to resolve any dispute arising under this AGREEMENT. In the event that such disputes cannot be resolved through this meet and confer process, the SETTLING PARTIES agree to request a settlement meeting before the Judge assigned to this action. In the event that the SETTLING PARTIES cannot resolve the dispute by the conclusion of the settlement meeting with the Judge, the SETTLING PARTIES agree to submit the dispute via motion to the Judge.

24. In resolving any dispute arising from this AGREEMENT, the Judge shall have discretion to award attorneys' fees and costs to either party. The relevant provisions of the then-applicable Clean Water Act and Rule 11 of the Federal Rules of Civil Procedure shall govern the allocation of fees and costs in connection with the resolution of any disputes before the Judge. The Judge shall award relief limited to compliance orders and awards of attorneys' fees and costs, subject to proof. The SETTLING PARTIES agree to file any waivers necessary for the Judge to preside over any settlement conference and motion practice.

## BREACH OF SETTLEMENT AGREEMENT

25. **Impossibility of Performance.** Where implementation of the actions set forth in this AGREEMENT, within the deadlines set forth in those paragraphs, becomes impossible, despite the timely good faith efforts of the SETTLING PARTIES, the party who is unable to comply shall notify the other in writing within seven (7) days of the date that the failure becomes apparent, and shall describe the reason for the non-performance. The SETTLING PARTIES agree to meet and confer in good faith concerning the non-performance and, where the SETTLING PARTIES concur that the non-performance was or is impossible, despite the timely good faith efforts of one of the SETTLING PARTIES, new performance deadlines shall be established. In the event that the SETTLING PARTIES cannot timely agree upon the terms of such a stipulation, either of the SETTLING PARTIES shall have the right to invoke the dispute resolution procedure described herein.

## GENERAL PROVISIONS

26. **Construction.** The language in all parts of this AGREEMENT shall be construed according to its plain and ordinary meaning, except as to those terms defined by law, in the General Permit, Clean Water Act or specifically herein.

27. **Choice of Law.** This AGREEMENT shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

28. **Severability.** In the event that any provision, section, or sentence of this AGREEMENT is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

29. **Correspondence.** All notices required herein or any other correspondence pertaining to this AGREEMENT shall be sent by regular, certified, or overnight mail as follows:

If to CSPA:

Bill Jennings, Chairman
California Sportfishing Protection Alliance
3536 Rainier Road
Stockton, CA  95204
Tel: (209) 464-5067
deltakeep@aol.com

And to:

Michael R. Lozeau
Lozeau Drury LLP
1516 Oak Street, Suite 216
Alameda, CA 94501
Tel:  (510) 749-9102
michael@lozeaudrury.com

If to Nelson's Marine:

Carl Nelson, President
Nelson's Marine
1500 Ferry Point
Alameda, CA 94501
Tel: (510) 814-1858

nelsonsmarine@gmail.com

And to:

Paul S, Kibel
Fitzgerald Abbott & Beardsley LLP
1221 Broadway, 21st Floor
Oakland, CA 94612
Tel: (510) 451-3300
pkibel@fablaw.com

Notifications of communications shall be deemed submitted on the date that they are e-mailed, postmarked and sent by first-class mail or deposited with an overnight mail/delivery service. Any change of address or addresses shall be communicated in the manner described above for giving notices.

30. **Counterparts.** This AGREEMENT may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopied, scanned (.pdf), and/or facsimiled copies of original signature shall be deemed to be originally executed counterparts of this AGREEMENT.

31. **Assignment**. Subject only to the express restrictions contained in this AGREEMENT, all of the rights, duties and obligations contained in this AGREEMENT shall inure to the benefit of and be binding upon the SETTLING PARTIES, and their successors and assigns.

32. **Modification of the Agreement:** This AGREEMENT, and any provisions herein, may not be changed, waived, discharged or terminated unless by a written instrument, signed by the SETTLING PARTIES.

33. **Full Settlement.** This AGREEMENT constitutes a full and final settlement of this matter. It is expressly understood and agreed that the AGREEMENT has been freely and voluntarily entered into by the SETTLING PARTIES with and upon advice of counsel.

34. **Integration Clause.** This is an integrated AGREEMENT. This AGREEMENT is intended to be a full and complete statement of the terms of the agreement between the SETTLING PARTIES and expressly supersedes any and all prior oral or written agreements

covenants, representations and warranties (express or implied) concerning the subject matter of this AGREEMENT.

35. **Authority.** The undersigned representatives for CSPA and Nelson's Marine each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this AGREEMENT.

The SETTLING PARTIES hereby enter into this AGREEMENT.

Date: 3-7, 2009

NELSON'S MARINE, INC.

By: Carl Nelson
Title: President

Date: 2 March, 2009

CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

By: Bill Jennings
Title: Executive Director

APPROVED AS TO FORM:

For DEFENDANT

Date: March 7, 2009

FITZGERALD ABBOTT & BEARDSLEY

By: Paul S. Kibel, Esq.

Date: March 2, 2009

For PLAINTIFF

LOZEAU DRURY LLP

By: Douglas J. Chermak, Esq.

15
SETTLEMENT AGREEMENT: CSPA v. Nelson's Marine, Inc. –
Case No 3:09-cv-00125-VRW